**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

**SAEID JAMSHIDIPARVAR,**

    *Petitioner*,

v.                                                                    **Case No. 5:25-CV-1326-JKP**

**BOBBY THOMPSON, Warden,**
**South Texas ICE Processing Center, et al.,**

    *Respondents*.

**ORDER GRANTING**
**PETITION FOR WRIT OF HABEAS CORPUS**

Before the Court is an Amended Petition for Writ of Habeas Corpus (ECF No. 11) filed pursuant to 28 U.S.C. § 2241. Respondents (often referred to as "the Government") have filed a response (ECF No. 13) and Petitioner has filed a reply (ECF No. 14). The operative petition is ready for ruling. After reviewing the briefing, provided evidence, and applicable law, the Court grants the amended petition for the reasons below.

**I. BACKGROUND**

Petitioner, a native and citizen of Iran, entered the United States on June 1, 2023, and was immediately detained and placed into expedited removal proceedings under Section 235 of the Immigration and Nationality Act ("INA"). He was transferred to his current detention facility on November 29, 2023.

On January 26, 2024, immigration authorities issued a Notice to Appear ("NTA") charging Petitioner with being present in the United States without having been inspected or admitted under 8 U.S.C. § 1182(a)(6)(A)(i). On May 15, 2024, Petitioner filed a Form I-589, Application for Asylum and for Withholding of Removal. On September 5, 2024, an immigration judge denied all requested relief and ordered Petitioner removed to Iran. On November 22, 2024, the Board of

Immigration Appeals ("BIA") dismissed Petitioner's appeal, and found the removal order administratively final. By December 30, 2024, immigration authorities pursued removing Petitioner to Iran to no avail. Iranian authorities have repeatedly refused to accept Petitioner's return to Iran.

Immigration authorities (San Antonio Field Office of Enforcement and Removal Operations ("ERO")) completed a 90-day post order custody review ("POCR") on February 19, 2025, and decided to continue Petitioner's detention. Although ERO received a tentative removal date of June 1, 2025, it was unable to secure proper travel documents for Petitioner and thus canceled any removal for that date. On June 9, 2025, ERO completed a 180-day POCR and again decided to continue detention. Three days later, Iran denied a request for travel documents.

On August 14, 2025, ERO submitted Form I-241 to begin possible third-party removal to Mexico, Columbia, or Turkey. On October 10, 2025, Petitioner commenced this habeas action pro se. On November 21, 2025, ERO requested relevant updates regarding removing Petitioner.

After Petitioner secured counsel, he filed the Amended Petition now before the Court. Through the Amended Petition, Petitioner asserts that his detention violates 8 U.S.C. § 1231(a)(6) and other provisions of the INA as interpreted by *Zadvydas v. Davis*, 533 U.S. 678 (2001). He further asserts a claim under the Fifth Amendment. On December 18, 2025, the Court ordered a response to the Amended Petition and ordered "that any possible or anticipated removal or transfer is **IMMEDIATELY STAYED** until further order from this Court. Respondents shall not transfer the above-named Petitioner outside of this judicial district during the pendency of this litigation and until further Order of this Court allowing removal or transfer." ERO became aware of the Court's order on December 19, 2025.

Respondents timely filed their response on December 22, 2025, claiming that they properly detain Petitioner on a mandatory basis under 8 U.S.C. § 1225(b). They argue that this case is controlled by *Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103 (2020) and *Jennings*

2

*v. Rodriguez*, 583 U.S. 281 (2018) rather than *Zadvydas* because the latter case interpreted the detention authority of a different statute, 8 U.S.C. § 1231, not the statute under which Petitioner is detained, § 1225(b). According to Respondents, Petitioner is mandatorily detained under 8 U.S.C. § 1225(b)(1)(B)(iii)(IV) until he is removed. For ease of reference, the Court will at times refer to this mandatory detention provision simply as ¶ IV. Alternatively, Respondents claim that Petitioner's detention is lawful under § 1231(a)(6) and Petitioner has not provided any good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future.

In reply, Petitioner contests the Government's arguments. Petitioner has been continuously detained since June 1, 2023, and more than fourteen months after his removal order became administratively final.

## II. LEGAL STANDARD

Habeas petitioners must show they are "in custody in violation of the Constitution or laws or treaties of the United States." *Villanueva v. Tate*, 801 F. Supp. 3d 689, 696 (S.D. Tex. 2025) (quoting 28 U.S.C. § 2241(c)(3)). They "bear[] the burden of proving that [they are] being held contrary to law; and because the habeas proceeding is civil in nature, the petitioner must satisfy [this] burden of proof by a preponderance of the evidence." *Id*. (quoting *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011) and citing *Bruce v. Estelle*, 536 F.2d 1051, 1058 (5th Cir. 1976)). Courts "considering a habeas petition must 'determine the facts and dispose of the matter as law and justice require.'" *Id.* at 697 (quoting 28 U.S.C. § 2243).

## III. ANALYSIS

Petitioner primarily argues that he is entitled to relief because his detention is illegal under *Zadvydas v. Davis*, 533 U.S. 678 (2001) in that his removal is not reasonably foreseeable. Respondents argue that Petitioner's reliance on *Zadvydas* is misplaced, because Petitioner is being

detained under 8 U.S.C. § 1225(b)(1), not § 1231. Alternatively, they argue that Petitioner's detention is lawful under 8 U.S.C. § 1231(a)(6) and that Petitioner does not satisfy the requirements for release under *Zadvydas*.

### A. Basis for Detention

Respondents first profess to rely on *In re Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025) for their contention that they lawfully detain Petitioner under 8 U.S.C. § 1225(b)(2) as an applicant for admission. However, that BIA opinion has no persuasive or other value as it has been soundly criticized and rejected as a basis for legitimizing detention under § 1225(b)(2). *See*, *e.g.*, *Orellana v. U.S. Dep't of Homeland Sec.*, No. 5:25-CV-1028-JKP, 2025 WL 3471569, at *4 (W.D. Tex. Nov. 24, 2025) (citing cases and noting an overwhelming rejection of Respondents' interpretation of § 1225(b)(2)).

Respondents further submit that 8 U.S.C. § 1225(b)(1)(B)(iii)(IV) provides their basis for detaining Petitioner. That provision provides for mandatory detention for noncitizens who have sought asylum but lack a credible fear of persecution. Subject to a review determination not at issue here, if an asylum "officer determines that an alien does not have a credible fear of persecution, the officer shall order the alien removed from the United States without further hearing or review." 8 U.S.C. § 1225(b)(1)(B)(iii)(I). In addition, any noncitizen "subject to the procedures under this clause shall be detained pending a final determination of credible fear and, if found not to have such a fear, until removed." *Id*. § 1225(b)(1)(B)(iii)(IV).

All those things, except removal, occurred in this case between May and November 2024. And since Petitioner's final order of removal, Respondents have been unable to remove him. Respondents focus on the "until removed" language, but Petitioner makes solid arguments for applicability of § 1231 based on *Zadvydas* and *Jennings*. As recognized by *Jennings*:

> Read most naturally, §§ 1225(b)(1) and (b)(2) . . . mandate detention of applicants for admission until certain proceedings have concluded. Section 1225(b)(1) aliens are detained for "further consideration of the application for asylum," and § 1225(b)(2) aliens are in turn detained for "[removal] proceeding[s]." Once those proceedings end, detention under § 1225(b) must end as well. Until that point, however, nothing in the statutory text imposes any limit on the length of detention. And neither § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings.

583 U.S. at 297. *Jennings* further recognized that "*Zadvydas* concerned § 1231(a)(6), which authorizes the detention of aliens who have already been ordered removed from the country." *Id*. at 298.

The dictate in *Jennings* that "detention under § 1225(b) must end" once the underlying asylum or removal proceedings have ended is simply incompatible with a position that the government can indefinitely detain a non-citizen who has been found to not have a credible fear of persecution. Instead, the "until removed" language of § 1225(b) contemplates that the removal will occur within the timeframe specified in § 1231(a), which provides for an extendable 90-day removal period. This flows from the fact that continued detention beyond the 90-day removal period under § 1231(a)(6) creates a "post-removal period," which allows for detention for "a period reasonably necessary to bring about the [noncitizen's] removal from the United States" and which *Zadvydas* set six months as presumptively reasonable. *Johnson v. Guzman Chavez*, 594 U.S. 523, 529 (2021). Thus, noncitizens may be detained under § 1225(b) only until their underlying asylum or removal proceedings end, at which mandatory detention commences for a 90-day removal period, which may be extended under § 1231(a)(6), but not indefinitely. Consequently, the "until removed" language does not allow for indefinite detention.

While Respondents want to still rely on § 1225(b) as the basis for the current detention, their argument has no basis in the statutory text. No one disputes that Petitioner is subject to a final order of removal. Such an order triggers the provisions found at § 1231 which, as its title suggests,

5

governs "Detention and removal of aliens ordered removed." There appears to be no basis for limiting § 1231 to specific processes by which a removal order was issued. It thus appears that § 1231, and thus *Zadvydas*, applies to this case.

Even if § 1225(b) provided the detention basis at one time, it gave way to § 1231 and its provisions concerning removal periods once the order of removal became administratively final. Although the provisions of § 1231 might have been inapplicable while Petitioner awaited the final determination on his credible fear assertion, once that determination occurred, there is no reason to not apply the provisions of § 1231. After all, § 1231 governs the detention, release, and removal of noncitizens who are subject to a final order of removal. Indeed, the issue addressed in *Zadvydas*, "whether aliens that the Government finds itself unable to remove are to be condemned to an indefinite term of imprisonment within the United States," *see* 533 U.S. at 695, appears to be the precise issue in this case.

For these reasons, the Court agrees that this case is governed by 8 U.S.C. § 1231(a). The Court thus considers the parties' arguments as to the lawfulness of Petitioner's detention under that statute.

**B. Application**

"When an alien has been found to be unlawfully present in the United States and a final order of removal has been entered, the Government ordinarily secures the alien's removal during a subsequent 90–day statutory 'removal period,' during which time the alien normally is held in custody." *Zadvydas*, 533 U.S. at 682; *accord* 8 U.S.C. § 1231(a)(1). Subject to exceptions within § 1231, subsection (a)(1) mandates that the Government remove the noncitizen during this initial 90-day removal period.

The removal period commences on the latest of three dates, two of which are limited to

specific circumstances. *See* 8 U.S.C. § 1231(a)(1)(B); 8 C.F.R. § 241.4(g)(1)(i). For example, the date of a reviewing court's final order may provide the latest date when "the removal order is judicially reviewed and if a court orders a stay of the removal." *See* 8 U.S.C. § 1231(a)(1)(B)(ii). Or the date the noncitizen "is released from detention or confinement" may provide the latest date when the noncitizen "is detained or confined (except under an immigration process)." *Id*. § 1231(a)(1)(B)(iii). If neither of those circumstances provide the latest date, then the period commences on the "date the order of removal becomes administratively final." *Id*. § 1231(a)(1)(B)(i).

The statute, however, also provides for an extension of the initial 90-day period in some circumstances. *Id*. § 1231(a)(1)(C). More specifically:

> The removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal.

*Id*.; *accord* 8 C.F.R. § 241.4(g)(1)(ii). Furthermore, certain noncitizens "may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3)." 8 U.S.C. § 1231(a)(6). Subsection (a)(6) applies to noncitizens who are (i) inadmissible under 8 U.S.C. § 1182, (ii) "removable as a result of violations of status requirements or entry conditions, violations of criminal law, or reasons of security or foreign policy"; or (iii) have been determined "to be a risk to the community or unlikely to comply with the order of removal." *Zadvydas*, 533 U.S. at 682 (cleaned up).

While § 1231(a) provides authority in some situations to detain a noncitizen beyond the 90-day removal period for as long as is "reasonably necessary to secure removal," the Supreme Court concluded that, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id*. at 699. Furthermore, the Supreme Court recognized that six months is a "presumptively reasonable period of detention." *Id*. at 701. This six-month period

includes the 90-day removal period. *See id.*; *Zavvar v. Scott*, No. CV 25-2104-TDC, 2025 WL 2592543, at *5–6 (D. Md. Sept. 8, 2025) ("Where the *Zadvydas* Court referenced the 90-day statutory removal period in its discussion of the six-month period, it is clear that the six months includes the original 90-day period of detention, plus an additional 90 days."). "But the Supreme Court has held that a noncitizen may not, consistent with the Due Process Clause, be detained indefinitely." *Villanueva v. Tate*, 801 F. Supp. 3d 689, 695 (S.D. Tex. Sept. 26, 2025) (citing *Zadvydas*, 533 U.S. at 697).

In this case, Petitioner's order of removal became administratively final in November 2024. There is no indication that the removal period was extended under § 1231(a)(1)(C). There is no question that Petitioner has been detained longer than the presumptively reasonable six-month period recognized in *Zadvydas*. To make out a *Zadvydas* claim after the six months have run, a detained noncitizen must "provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. Once the noncitizen has carried that initial burden, "the Government must respond with evidence sufficient to rebut that showing." *Id*.

"Good reason" is not an onerous standard. Indeed, at least one court has characterized it as a "modest standard." *Singh v. Whitaker*, 362 F. Supp. 3d 93, 102 (W.D.N.Y. 2019) *abrogated on other grounds by Alvarez Ortiz v. Freden*, No. 25-CV-960-LJV, 2025 WL 3085032 (W.D.N.Y. Nov. 4, 2025) (abrogating court's prior position on declining to enjoin transfer of a petitioner while the court considered its authority to issue relief). *Zadvydas* itself recognized that a detainee need not rule out "*any* prospect of removal—no matter how unlikely or unforeseeable." 533 U.S. at 702. And continuing good faith efforts to effectuate removal is only part of the equation, because the calculus requires courts to give due weight to the likelihood of those efforts to succeed in the

8

future. *Id*. Further, "for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id*. at 701.

Petitioner has been confined since June 2023 and more than fourteen months after his order of removal became administratively final. Yet, despite efforts to remove Petitioner, the Government has been unable to do so. Petitioner's home country, Iran, has stonewalled efforts to remove Petitioner and has repeatedly refused to accept his return. The Government's removal efforts are marked by delays and failures. While the Government has also unsuccessfully pursued third-country removal, Petitioner was unaware of such pursuit until the Government's response in this case. Third-country removal, furthermore, is fraught with inherent delays and uncertainty as to removal prospects. *See Marquez-Amaya v. Thompson*, No. 5:25-CV-1501-JKP, 2025 WL 3654327, at *6 (W.D. Tex. Dec. 15, 2025). On these facts, the Court has no difficulty in finding that Petitioner has provided good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future and has carried his initial burden. The burden thus shifts to the Government to show that removal is likely in the foreseeable future. Through a submitted declaration, the Government submits that ICE is actively working with its agency counterparts to secure removal to Iran as well as third-country removal. But, under the facts of this case, that declaration does not carry the Government's burden.

As the Petitioner aptly states in reply, the Government dismisses its failures and delays while insisting that removal to Iran is reasonably foreseeable. But given what has transpired to date, the Court cannot find that the Government has carried its burden as to removal to Iran. Respondents point to twenty-seven removals of Iranian nationals in fiscal year 2024 and ten more in the first quarter of fiscal year 2025, yet they fail to give meaning to such numbers by not revealing

the number of detainees who still await removal to Iran or the length of the average waiting time for such removal. Petitioner's reply provides strong and persuasive reasons for finding that the Government has not carried its burden as to removal to Iran.

The Government's efforts to carry its burden by asserting third-country removal likewise come up short. That the Government may be still working on such removal after beginning possible third-country removal to Mexico, Colombia, or Turkey in August 2025, and following up three months later by requesting an update does not show that removal is likely in the foreseeable future. The Government has not reported any progress since requesting the November 2025 update. It does not estimate when the third-country removal may materialize. The mere fact that the third-country requests may remain pending is not enough. Months have passed without any indication of any progress on such removals.

Under the circumstances of this case, the Court concludes that habeas relief is proper and *Zadvydas* requires Petitioner's release from his unlawful detention. The Court finds no need to address any claim or challenge not addressed herein. And, while Petitioner requests attorney fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d)(1)(A), the Fifth Circuit has held that recovery of attorney fees are not available in habeas corpus proceedings. *See Barco v. Witte*, 65 F.4th 782, 785 (5th Cir. 2023). The Court thus denies the request for fees.

### IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Amended Petition for Writ of Habeas Corpus (ECF No. 11). It is **ORDERED** that:

1. Respondents are **DIRECTED** to **RELEASE** Petitioner Saeid Jamshidiparvar from custody, under appropriate conditions of release, to a public place no later than **February 4, 2026**.

2. Respondents must **NOTIFY** Petitioner's counsel of the exact location and exact time of his release as soon as practicable and no less than two hours before his release.

3. Any possible or anticipated removal or transfer of Petitioner under this present detention is **PROHIBITED** unless Respondents are able to remove Petitioner to his native country Iran before releasing him in accordance with the timeframe of this Order.

4. The parties shall **FILE** a Joint Status report no later than **February 5, 2026**, confirming that Petitioner has been released.

A final judgment will be issued separately.

**IT IS SO ORDERED this 2nd day of February 2026.**

**JASON PULLIAM**
**UNITED STATES DISTRICT JUDGE**